# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID ELOVIC and ANNE ELOVIC, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 06 C 943 |
| v. | )<br>) Judge Joan B. Gottschall |
| NAGAR CONSTRUCTION COMPANY, INC., ESTATES WINDOWS, LTD., and HURD WINDOWS & DOORS, INC. | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case arises from a home construction contract between plaintiffs David and Anne Elovic ("the Elovics") and defendant Nagar Construction Company, Inc. ("Nagar"), which was the general contractor for the construction of the Elovics' residence in Skokie, Illinois. The other defendants are Estates Windows, Ltd. ("Estates"), the subcontractor hired by Nagar to purchase and install windows at the Elovic residence, and Hurd Windows & Doors, Inc. ("Hurd"), the manufacturer of the windows purchased and installed by Estates. In the Elovics' second amended complaint, they raise the following claims: (1) breach of contract against Nagar ("Count I"); (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1-505/12 (West 1999 & Supp. 2006) ("CFA"), against Nagar ("Count II"); (3) violation of the CFA against Estates ("Count III"); (4) violation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-2312 (2006), against Hurd ("Count IV"); (5) breach of the implied warranty of habitability against Nagar ("Count V"); and (6) negligence against Nagar ("Count VI"). Nagar and Estates have

1

each moved to dismiss certain claims in the Elovics' second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Nagar seeks the dismissal of Counts I, II, V, and VI, and Estates seeks the dismissal of Count III. For the reasons set forth below, Nagar's and Estates' motions are denied in their entirety.

**I. BACKGROUND**

The following facts relevant to the pending motions, which are taken primarily from the Elovics' second amended complaint, are assumed to be true for purposes of this order and are recited in the light most favorable to the Elovics. *See, e.g.*, *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (on a Rule 12(b)(6) motion, the plaintiff's facts are assumed true and any inferences should be drawn in the plaintiff's favor). On October 17, 1999, the Elovics entered into a contract ("the Agreement") with Nagar, an Illinois corporation, for the construction of a residence in Skokie, Illinois. The Agreement referenced and incorporated architect's blueprints which specified that Pella brand windows would be used in the construction. At the time the Agreement was entered, Nagar, through its agent Linda Kogen ("Kogen"), represented to the Elovics that Nagar had the experience and expertise to properly perform, or contract for the performance of, the work specified in the Agreement, including the installation of windows suitable for the climate where the property is located.

Shortly after the Agreement was entered, Nagar subcontracted the window installation component of the Agreement to Estates, a Delaware corporation licensed to do business in Illinois. Nagar, again through Kogen, told the Elovics that Estates was qualified to perform the work required under the Agreement. In December of 1999, Estates installed the windows in the Elovic residence. However, Estates did not use Pella

windows, as required by the Agreement. Instead, Estates purchased and installed windows manufactured by Hurd. According to the Elovics, Kogen told them that the Hurd windows were of the same quality as the Pella windows specified in the Agreement and were appropriate for the weather conditions in the area where the Elovic residence is located. The Elovics also allege that Estates knew or should have known that the Hurd windows were not suitable for the climate in the locale, but did not disclose this fact.

Upon moving into their residence after the construction was complete, the Elovics began experiencing problems with the Hurd windows installed by Estates. Specifically, in November of 2000 the Elovics noticed that an excessive amount of moisture was accumulating on nearly all of the windows in the house, causing fogging and icing. The Elovics informed Nagar and Estates about the problem, and were told that it is typical for newly constructed residences to have condensation problems because of moisture in the building products. According to the Elovics, Kogen and agents on behalf of Estates told them that the issue would resolve itself by the second year after construction.

Contrary to Nagar's and Estates' representations, however, the condensation did not alleviate. The following winter, the Elovics experienced the same moisture problems. Once again, the Elovics complained to Nagar and Estates. This time, Kogen, on behalf of Nagar, and Dennis Stangel ("Stangel"), on behalf of Estates, told the Elovics that the problem was due to excess humidity in the Elovics' residence and that the situation would improve if the Elovics stopped using their humidifier. The Elovics did as they were told and turned their humidifier off. For the next year, the Elovics monitored the humidity levels in their residence, and even conducted research to determine the proper humidity level for houses in their geographic area during the winter. Even though the

3

Elovics maintained an appropriate humidity level in their home, the condensation problem resurfaced the following winter. Once more, the Elovics notified Nagar and Estates. On November 5, 2003, Gary Popowski, on behalf of Hurd, and Stangel, on behalf of Estates, inspected the windows and advised the Elovics to purchase and install a dehumidifier in their home. The Elovics did so, but the problem still did not abate.

Finally, on December 2, 2003, the Elovics allegedly discovered the true cause of their problems: inferior windows. Specifically, the Elovics claim they learned that the Hurd windows installed by Estates had a "U-factor" energy performance rating that was insufficient for the geographic area in which the Elovics' home is located. Second Am. Compl. ¶ 21e; Pl.'s Resp. Nagar's Mot. Dismiss 4. A U-factor rating is a rating that indicates the amount of heat loss a window will allow—the lower the U-factor rating, the greater a window's insulating capacity. In the Elovics' case, the Hurd windows installed in their residence had a U-factor rating that was too high for the locale and were therefore losing too much heat during the winter months, resulting in excessive condensation on the inside of the windows. The Elovics allege that the Hurd windows were inferior to the Pella windows called for in the Agreement, and suggest that the moisture problems would not have occurred if the Pella windows had been installed.

According to the Elovics, they have suffered numerous injuries due to the Hurd windows, including property damage caused by excessive mold as well as unspecified physical harm (allegedly resulting from the artificial alteration of the humidity level in the house). The Elovics state that, but for Nagar's and Estate's representations and omissions, they would not have entered into the Agreement or consented to the

installation of the Hurd windows in their residence and would have discovered the cause of the excessive moisture long before December 2, 2003.

The Elovics informed Nagar and Estates of the cause of the condensation problems, but the parties were apparently unable to arrive at a mutually agreeable resolution because the Elovics filed this lawsuit in the Circuit Court of Cook County, Illinois, on February 14, 2005. The case was subsequently removed to this court on February 21, 2006. Following the filing of the Elovics' second amended complaint, Nagar and Estates filed the motions to dismiss that are the subject of this order.

## II. ANALYSIS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). A Rule 12(b)(6) motion should be granted only when it is clear that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief on the claim at issue. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

In their respective motions to dismiss, Nagar and Estates raise legal issues that overlap to a certain extent (indeed, Nagar adopted Estates' arguments regarding Count III wholesale, simply asking the court to analyze those arguments as they apply to Count II). For the sake of simplicity, the court will treat the legal questions raised in a cohesive manner rather than considering Nagar's and Estate's positions separately. When necessary, the court will indicate that a particular argument was made with regard to a specific count or on behalf of a specific defendant. The court addresses the following

issues in turn: (1) whether Counts I, II, III, V, and VI are barred by the statute of limitations; (2) whether the Elovics have pleaded their CFA claims, Counts II and III, with sufficient particularity; (3) whether Count V states a claim for breach of the implied warranty of habitability; and (4) whether the Elovics' negligence claim, Count VI, is barred because it is based on purely economic loss.[1]

### A. The Statute of Limitations Does Not Bar the Elovics' Claims

Between them, Nagar and Estates have moved for the dismissal of every one of the Elovics' claims at issue in this order on statute of limitations grounds. The parties agree that Counts I, V, and VI are governed by the Illinois statute of limitations applicable to suits arising from construction, 735 Ill. Comp. Stat. Ann. 5/13-214 (West 2003 & Supp. 2006), which provides, in relevant part, as follows:

> Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action . . . knew or should reasonably have known of such act or omission.

*Id.* § 5/13-214(a). The parties also agree that the statute of limitations contained in section 10a of the CFA, 815 Ill. Comp. Stat. Ann. 505/10a (West 1999 & Supp. 2006) applies to Counts II and III. Under section 10a, a plaintiff must bring a CFA action "within 3 years after the cause of action accrued." *Id.* § 505/10a(e). As with the

---

[1] Nagar also argues that the Elovics' second amended complaint should be dismissed with leave to replead because the Elovics have incorporated by reference the allegations of all preceding paragraphs into each successive count. According to Nagar, pleading in this manner violates Rule 10(b) of the Federal Rules of Civil Procedure and is confusing because it requires Nagar to determine which of the preceding paragraphs are specifically directed at it rather than the other defendants. This contention need not be considered at length, for not only is Nagar wrong with respect to Rule 10(b), but its argument is absurd. The second amended complaint is clear and concise, and any difficulty Nagar may have deciphering it is not due to the Elovics' draftsmanship. Moreover, if the Elovics were required to plead each count inclusively, as Nagar suggests, their complaint would at least quadruple in size. The court therefore rejects Nagar's argument that the second amended complaint should be dismissed under Rule 10(b).

construction statute cited above, a cause of action under the CFA accrues when "the plaintiff knows or reasonable should know of the injury, and knows or reasonably should know that the injury was wrongfully caused." *IFC Credit Corp. v. Re-Box Packaging, Inc.*, No. 01 C 9269, 2004 WL 1336258, at *2 (N.D. Ill. June 15, 2004) (citing *Midland Mgmt. Corp. v. Computer Consoles*, 827 F. Supp. 886, 887 (N.D. Ill. 1993)). Thus, the oft-cited "discovery rule" applies to both of the statutes of limitation relevant to this order. *See, e.g.*, *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006) (noting that Illinois courts apply the discovery rule to postpone the accrual of an action until the plaintiff knows or reasonably should know of the injury and that the injury was wrongfully caused); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, No. 00 C 1164, 2005 WL 3483162, at *4 (N.D. Ill. Dec. 16, 2005) ("Illinois courts apply the discovery rule, which states that the statute of limitations begins to run once a person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." (internal quotation marks and citations omitted)).

The arguments made by both Nagar and Estates relate to the accrual of the Elovics' various causes of action. As to Counts I, V, and VI, Nagar argues that the act giving rise to the Elovics' suit was the installation of the Hurd windows in December of 1999. If the windows were improper, Nagar asserts, the Elovics knew or should have known they were improper when they were installed, giving the Elovics four years—until December of 2003—to bring this suit. Nagar points out that the Elovics did not file their complaint until February of 2005, fifteen months later, and argues that this case is therefore barred by the statute of limitations.

Similarly, Estates and Nagar (through its adoption of Estates' position) assert that Counts II and III are time-barred because the Elovics knew or should have known of their injury and that it was wrongfully caused prior to February 14, 2002 (three years before the filing of the instant action). Specifically, Estates and Nagar point out that the Elovics' allege they began experiencing condensation on their windows in November of 2000 and were told by Estates and Nagar that the problem was normal and would resolve itself within two years after the initial construction—in other words, by December of 2001. Thus, according to Estates and Nagar, the Elovics were on notice that their injury was wrongfully caused by December of 2001, when the issue did not resolve itself, and their cause of action therefore accrued prior to February 14, 2002.

The problem with the defendants' assertions is that both defendants ignore the additional actions they allegedly took. The Elovics concede they were aware that Hurd windows were installed instead of Pella windows in December of 1999 and that they knew there was a problem with the windows as early as November of 2000, when they first complained to the defendants. However, the Elovics allege that they raised the issue with the defendants again when the problem resurfaced in the winter of 2002 and were told that they should turn off their humidifier. The following winter, when the Elovics complained again, Stangel actually inspected the windows on behalf of Estates and advised the Elovics to purchase a dehumidifier. Thus, according to the Elovics, they did not discover that the problem with the windows was wrongfully caused until December 2, 2003, because—due to the defendants' representations—they were not aware that the windows themselves were the source of the condensation until that date.

At this point, the Elovics' allegations are sufficient to avoid dismissal on statute of limitations grounds. As the Elovics point out, dismissal of a claim as untimely under Rule 12(b)(6) is rare, and a plaintiff is not obligated to draft a complaint that anticipates and attempts to overcome a statute of limitations defense. *See Hollander*, 457 F.3d at 691 n.1. If the Elovics' allegations are accepted true (and they must be), then the Elovics' causes of action did not accrue until December 2, 2003, when the Elovics became aware that the Hurd windows were the cause of the excessive moisture in their home. Because this suit was filed just over two years later, on February 14, 2005, the applicable statutes of limitation do not bar any of the Elovics' claims. It is possible, however, that the defendants will develop facts in discovery that require a different result. The defendants are therefore free to revisit this issue at the summary judgment stage. For now, their motions to dismiss on statute of limitations grounds are denied.

**B. The Elovics Have Pleaded Their CFA Claims With Sufficient Particularity**

Nagar and Estates next argue that the Elovics' CFA claims, Counts II and III, must be dismissed due to inadequate pleading. The CFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 960 (Ill. 2002). In order to state a claim under the CFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception." *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (citing *Oliveira v. Amoco*

*Oil Co.*, 776 N.E. 2d 151, 160 (Ill. 2002)); *see also Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 867 (N.D. Ill. 2006) (same).

Nagar and Estates contend that the Elovics have failed to plead their CFA claims with particularity. When a plaintiff's CFA claim is based on deceptive practices, and thus sounds in fraud, the plaintiff must plead the claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Muehlbauer*, 431 F. Supp. 2d at 869; *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005); *Harris v. River View Ford, Inc.*, No. 00 C 8129, 2001 WL 1191188, at *3-4 (N.D. Ill. Oct. 3, 2001). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The "circumstances" that a plaintiff must plead with particularity under Rule 9(b) are "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (same).

The Elovics' initial argument in response is that their CFA claims need not meet Rule 9(b) because those claims are based on unfair conduct and do not sound in fraud. It is true that a plaintiff can seek recovery under the CFA for unfair as well as deceptive practices. *See Thomas v. Arrow Fin. Servs.*, No. 05 C 5699, 2006 WL 2438346, at *7 (N.D. Ill. Aug. 17, 2006); *Harris*, 2001 WL 1191188, at *4; *Robinson*, 775 N.E. 2d at 960. Illinois courts consider the following factors in determining whether conduct is unfair, and thus actionable under the CFA: (1) whether the practice offends public policy;

(2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Thomas*, 2006 WL 2438346, at *7; *Robinson*, 775 N.E. 2d at 961. A plaintiff need not satisfy all three criteria. *Robinson*, 775 N.E. 2d at 961. Allegations of unfair conduct do not sound in fraud, and thus a plaintiff seeking relief under the CFA for unfair conduct need not comply with Rule 9(b). *See Thomas*, 2006 WL 2438346, at *7; *Harris*, 2001 WL 1191188, at *4.

An examination of Counts II and III in the Elovics' second amended complaint reveals that the Elovics' CFA claims are based on deceptive, rather than unfair, conduct, and thus sound in fraud. Nowhere in those counts is there an allegation indicating that the Elovics are attempting to establish unfair conduct through the three criteria listed above. To the contrary, the Elovics contend that Nagar and Estates concealed material facts and made false representations regarding the Hurd windows. These are allegations of fraud. *See Muehlbauer*, 431 F. Supp. 2d at 867-68. Moreover, the Elovics specifically contend that Nagar's and Estates' actions amount to "a *deceptive* act or practice." Second Am. Compl. ¶¶ 44, 66 (emphasis added). While the Rule 8 pleading regime is liberal, the court will not read the Elovics' second amended complaint to mean something other than what it says on its face; if the Elovics wish to allege unfair rather than deceptive practices, they must seek leave to amend their complaint. The court therefore rejects the Elovics' argument that their CFA claims are based on unfair conduct and holds that Counts II and III are subject to the particularity requirement of Rule 9(b).

The Elovics' next argument is stated in the alternative; the Elovics contend that if the court finds that their CFA claims sound in fraud, those claims are nonetheless sufficiently pleaded under Rule 9(b). Estates and Nagar both argue that the Elovics'

allegations do not adequately identify the time, place, and content of many of the purported misrepresentations. The court disagrees. As to Nagar, the Elovics allege that Nagar, through Kogen, made material omissions and misrepresentations concerning the Hurd windows, both before and after the windows were installed. The Elovics identify the timeframes (sometimes approximate, sometimes specific) during which the communications took place, and describe with reasonable precision the substance of Kogen's misrepresentations. For example, the Elovics allege that they informed Nagar of the excessive condensation on their windows in November of 2000, and were advised by Kogen "that a newly constructed residence always has condensation issues due to moisture in the building products and that the condensation on the windows should resolve by the second year after construction." Second Am. Compl. ¶¶ 31-32.

The same is true of the Elovics' allegations with respect to Estates. The Elovics allege that Estates was aware that the Hurd windows were insufficient when it installed them, but concealed that fact from the Elovics and continued to mislead the Elovics after the windows were installed. The Elovics point to three separate instances in which they were misled by statements made by Estates' agents; in two of these instances, the Elovics identify the person who made the representations—Stangel. For example, the Elovics allege that "[o]n or about November 5, 2003, Dennis Stangel inspected the windows at the Elovics' residence and advised the Elovics should purchase a dehumidifier to resolve the moisture condensation problems with the windows." *Id.* ¶ 60.

While the Elovics' second amended complaint is not overflowing with details, the defendants' contention that it does not contain enough information to allow them to mount an adequate response is overblown. It is true that the timeframes provided by the

Elovics are sometimes broad, and the Elovics do not always identify the method of the defendants' communications. However, the court will not dismiss the Elovics' claims simply because they do not state whether the alleged misrepresentations were made over the phone or in person. Taken as a whole, the second amended complaint informs Nagar and Estates of the circumstances on which the Elovics' CFA claims are based with sufficient precision to put them on notice of the conduct they are required to defend. The proper venue for the defendants to test the merits of the Elovics' allegations is in discovery. The court therefore rejects the defendants' argument that Counts II and III should be dismissed because they fail to meet the particularity requirement of Rule 9(b).

Before proceeding, there is an additional argument raised by Nagar and Estates that warrants brief discussion. The defendants assert that the Elovics have not demonstrated how the defendants' actions proximately caused them to suffer actual damages. This argument lacks merit, at least at the motion to dismiss stage. The alleged fraudulent actions in this case consist of both omissions and affirmative misrepresentations. *See, e.g.*, *Muehlbauer*, 431 F. Supp. 2d at 867-68 (distinguishing between allegations of fraud based on omissions and those based on misrepresentations). As to the Elovics' allegations of fraudulent concealment, it is enough that the Elovics have stated they would not have allowed the Hurd windows to be installed if the defendants had disclosed the material facts regarding those windows. *See id.* at 868.

With respect to the defendants' affirmative misrepresentations, the Elovics allege that their reliance on the defendants' faulty advice caused them to suffer mounting property damage and personal harm because they left the windows in place longer than they otherwise would have. The defendants cite *Connick v. Suzuki Motor Co., Ltd.*, 675

N.E. 2d 584, 594 (Ill. 1996), for the proposition that proximate cause in a CFA action exists only where a defendant's alleged misrepresentations were made prior to the plaintiff's purchase of consumer goods. The cited portion of *Connick*, however, is dicta and merely states that, in that case, purchasers of allegedly defective automobiles could not satisfy the CFA element of proximate cause by relying on public statements made by the manufacturer after the vehicles had already been purchased. *Id.* This is not a complex premise—clearly, statements made *after* the plaintiffs purchased their vehicles could not have caused the plaintiffs to buy those vehicles. However, in *Connick* the plaintiffs *also* alleged that they purchased their vehicles after Car and Driver magazine published an article based on certain misstatements made by the manufacturer. *Id.* at 595. With regard to these allegations, the court held that the plaintiffs had adequately pleaded proximate cause, noting that "the required allegation of proximate cause is minimal." *Id.* Thus, *Connick* actually supports the Elovics' position.

At this point in the litigation, the Elovics have adequately pleaded that the defendants' omissions and misrepresentations proximately caused them to suffer actual damages. *See, e.g.*, *Muehlbauer*, 431 F. Supp. 2d at 868 (an allegation of proximate cause need be only minimal because the question of causation is typically left to the fact-finder). Accordingly, the defendants' motions to dismiss Counts II and III are denied.

### C. The Elovics Have Stated a Claim for Breach of the Implied Warranty of Habitability

Next, Nagar argues that the Elovics' claim for breach of the implied warranty of habitability, Count V, should be dismissed for failure to state a claim. The implied warranty of habitability is a public policy doctrine that forces homebuilders to bear the cost when it is proven that a home has a latent defect caused by improper design,

material, or workmanship that renders the property unsuitable for use as a home. *See Bd. of Managers of Vill. Centre Condo. Ass'n, Inc. v. Wilmette Partners*, 760 N.E. 2d 976, 979 (Ill. 2001); *Bd. of Dirs. of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 712 N.E. 2d 330, 334 (Ill. 1999); *Eickmeyer v. Blietz Org., Inc.*, 671 N.E. 2d 795, 801 (Ill. App. Ct. 1996).

Nagar's arguments in support of dismissal are extremely conclusory; Nagar simply states that the Elovics have not alleged that the Hurd windows were a latent defect or that any purported defects in the windows interfered with the Elovics' use of the home as a residence. In response, the Elovics argue that, contrary to Nagar's representations, the Hurd windows were not appropriate for the area where the Elovic residence is located due to their low U-factor rating and therefore the Hurd windows were a latent defect in the home. They also note that their second amended complaint alleges that the moisture problems caused by the Hurd windows made the home "not . . . fit for the ordinary purpose of living in it." Second Am. Compl. ¶ 82. These allegations are sufficient to avoid dismissal. *See, e.g.*, *Naiditch v. Shaf Home Builders, Inc.*, 512 N.E.2d 1027, 1038 (Ill. App. Ct. 1987) (stating that a plaintiff establishes a breach of the implied warranty of habitability against the builder of a home by demonstrating the existence of a defect caused by improper design, material, or workmanship that renders the property unsuitable for use as a home). At this point in the litigation, the Elovics are required only to adequately place Nagar on notice of their claims, and they have done so. *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Because it is possible that the Elovics will be able to establish a set of facts entitling them to relief on their implied warranty of habitability claim, Nagar's motion to dismiss Count V is denied.

15

### D. The Elovics Have Stated a Claim for Negligence

Finally, Nagar argues that the Elovics cannot maintain their negligence claim, Count VI, because that claim is premised on solely economic loss. Citing *Moorman Manufacturing v. National Bank*, 435 N.E. 2d 443 (Ill. 1982), Nagar argues that when a plaintiff's alleged damages are purely economic, the plaintiff cannot recover under a tort theory of negligence in Illinois. Nagar contends that Count VI must be dismissed under *Moorman* because the Elovics "seek recovery for damage resulting from water leakage from ice accumulations and condensation" and "are unable to allege any personal injuries, be it of a physical or emotional nature." Mem. Supp. Nagar's Mot. Dismiss 6.

In response, the Elovics agree that *Moorman* bars recovery for purely economic loss under a tort theory of negligence. However, the Elovics contend that they have alleged non-economic injuries. Specifically, the Elovics point to their second amended complaint, which states that "the Elovics have suffered, and continue to suffer damages, which include, without limitation, the replacement cost of the windows, the persistence of mold (which requires removal), and physical injury to their persons and the other inhabitants of their residence." Second Am. Compl. ¶ 90; *see also id.* ¶ 88 (alleging that the Elovics have suffered "physical discomfort and harm"). At this early stage, these allegations are sufficient. *See, e.g., Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 327 (Ill. 1982) (noting that *Moorman* rule bars negligence claim where only damage alleged is inadequate value, cost of repair and replacement, or loss of profits). While the Elovics' allegations of physical harm seem far-fetched, the Elovics are not required to plead their injuries in detail. If the injuries claimed by the Elovics lack merit, Nagar may ferret them

out in discovery and move for summary judgment. Nagar's motion to dismiss Count VI is denied.

### III. CONCLUSION

For the foregoing reasons, Nagar's and Estates' motions to dismiss are denied.

ENTER:

/s/
Joan B. Gottschall
United States District Judge

DATED: April 16, 2007